**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GEOFFREY G. GEORGE<br>322 Bachmoll Road<br>Hamburg, PA 19526<br><br>Plaintiff,<br>v.<br><br>LOWE'S HOME CENTERS, LLC<br>D/B/A LOWE'S<br>1000 Lowes Blvd.<br>Mooresville, NC 28117<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br>CASE NO.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Geoffrey G. George (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Lowe's Home Centers, LLC d/b/a Lowe's (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), the Family and Medical Leave Act ("FMLA – 29 U.S.C. §2601 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks

redress for civil rights violations under the ADA and FMLA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit under the ADA within 90 days of receiving a right-to-sue letter from the EEOC.

6. Plaintiff has properly exhausted his administrative remedies regarding his PHRA claims by dual filing his Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by waiting at least one year since the filing before asserting his PHRA claims.

## **PARTIES**

7. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8. Plaintiff is an adult individual, with an address as set forth in the caption.

9. Defendant Lowe's Home Centers, LLC d/b/a Lowe's is a large home improvement retail chain, with headquarters located at the address as set forth in the caption.

10. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was hired by Defendant on or about June of 2021, as a member of the Merchandising Service Team ("MST"), setting up and preparing displays and engaging vendors.

13. Plaintiff was initially hired to work at Defendant's Hamburg, PA location, and in or about 2022, Plaintiff was transferred to Defendant's Sinking Springs, PA retail location where he continued working on the MST.

14. While working at Defendant's Sinking Springs, PA retail location, on or about September 28, 2023, Plaintiff suffered a serious-work related injury to his shoulder/rotator cuff while taking down stock on a ladder.

15. The following day, Plaintiff reported his work-related injuries/serious health conditions to management, as he was experiencing severe pain and mobility issues.

16. Despite Plaintiff's serious health conditions and limitations, Plaintiff was able to perform his job duties well; however, he (at times) requires some reasonable medical accommodations.

17. For example, Defendant sent Plaintiff to Defendant's worker's compensation doctor almost immediately after reporting his work-related injuries/serious health conditions.

18. Over the next few months, Plaintiff continued care and treatment for his work-related injuries/serious health conditions, first attending physical therapy, obtaining an MRI, and then undergoing surgery in or about December of 2023.

19. Plaintiff was cleared to return to work light duty in or about February of 2024, at which time Plaintiff was given light duty work of watering flowers and/or greeting customers.

20. However, in or about October of 2024, Defendant's management informed Plaintiff that they could no longer accommodate his health conditions, advising Plaintiff that the only job that he "could handle" with his aforementioned work-related injuries/serious health conditions was that of a cashier, and then alleging that there were purportedly no cashier jobs at the Sinking Springs, PA retail location.

21. Plaintiff was then transferred to Defendant's Reading, PA retail location at 500 Madison Ave., Reading, PA.

22. At the Reading, PA retail location, Plaintiff fell under the supervision of Department Supervisor, Enger Nonon (hereinafter "Nonon"), and Associate Manager, Marcy Fink (hereinafter "Fink").

23. The second that Plaintiff started at Defendant's Reading, PA location, he was subjected to hostility, animosity, and retaliation as a result of his work-related injuries/serious health conditions.

24. For example, Plaintiff was immediately yelled at by Fink as he walked into his first day at the Reading, PA location for not having a store vest on, in front of other employees

and customers, despite that: (1) Plaintiff had not yet received a vest; and (2) Fink was not wearing a vest herself.

25. Fink next placed Plaintiff to work at the self-checkout area of the store to monitor customers and answer questions.

26. However, Fink then started berating Plaintiff for occasionally looking at his smart watch as he was working, which he uses to regulate and check his other long-standing health conditions.

27. For example, in addition to Plaintiff's aforementioned work-related health conditions, Plaintiff suffers from heart conditions (and associated complications such as ventricular fibrillation ("VFib")), diverticulitis (and flares related thereto), and hearing issues – for which Plaintiff wears a hearing aid.

28. Fink seemed completely uncaring that Plaintiff was using his watch to monitor his aforementioned health conditions (which Plaintiff believed to be a reasonable accommodation under the ADA), by continuing to yell at Plaintiff, including advising Plaintiff that he could not use this particular very reasonable medical accommodation.

29. Fink outright denied Plaintiff's ability to utilize his watch to monitor his serious health conditions without providing any legitimate reason as to why or further engaging in any interactive process as required under the ADA.

30. Shortly thereafter, Plaintiff was then brought into the office with Fink and another manager, Jeff (last name unknown, hereinafter "Jeff"), during which they alleged that Plaintiff was on video standing and "just reading his schedule" for the entirety of his first 1.5 weeks of work, which is patently untrue and ludicrous. However, Fink refused to allow Plaintiff to see the video and informed Plaintiff that he was a "liar."

31. At all relevant times hereto, Defendant's management, including but not limited to Fink, were aware of Plaintiff's aforementioned work-related injuries/serious health conditions before his arrival at the Reading, PA location, as they knew of his limitations and resulting position placement, and Plaintiff advised Fink of his heart conditions and diverticulitis.

32. Additionally, in or about November of 2024, Plaintiff required a few days off from work as he was hospitalized for a flareup of his diverticulitis (a reasonable accommodation under the ADA).

33. Upon Plaintiff's return to work, Fink hostilely advised Plaintiff that he had missed time and if he was going to need time off work in the future for his disabilities, he would need to apply for FMLA.

34. As a result of Fink's hostile treatment of Plaintiff for taking time off for his aforesaid health conditions, Plaintiff applied for FMLA leave, which he utilized just a few times over the next few months.

35. However, whenever Plaintiff needed to utilize intermittent time off for his aforesaid health conditions, he was subjected to pre-textual admonishment and discipline in retaliation by Fink and others.

36. For example, in or about late 2024, Fink and Store Manager, Jason Yu (hereinafter "Yu") advised Plaintiff that he was purportedly "not signing up enough customers for credit cards" and was immediately removed from self-checkout and placed as a cashier out in cold temperatures in the lumber department.

37. Thereafter, suddenly, in or about December of 2024, Plaintiff was advised that his drawer had been short on two occasions over a month or two prior, in the amount of

approximately $90 (which Plaintiff later discovered was likely the result of exchange scams from customers – which happened frequently at the Reading, PA location).

38. Plaintiff was not the only employee who had ever fallen for such a scam or that had a short drawer.

39. However, Defendant waited until approximately one or two months after the alleged drawer shortages and ***only after*** Plaintiff started to utilize his intermittent medical leave to discipline him for the same.

40. Additionally, around that same time, in clear retaliation for his requests for/utilization of reasonable medical accommodations, Defendant also reduced Plaintiff's hours from 40 to 32 hours per week. Yet, other employees who worked next to Plaintiff were offered overtime regularly.

41. While Plaintiff was working as a cashier in the lumber yard, Fink also continued to berate Plaintiff for looking at his phone very occasionally to adjust his hearing aids (as there was more noise in that area and Plaintiff needed to hear the customers).

42. Fink then advised Plaintiff suddenly that Plaintiff needed to apply for a separate accommodation to take breaks for his phone and hearing aid – as opposed to him just having intermittent FMLA as needed for his health conditions as a whole, which made no sense to Plaintiff.

43. In addition to needing to periodically look at his phone to adjust his hearing aids, Plaintiff sometimes needed additional and sudden breaks to use the bathroom when he suffered a flare-up of his diverticulitis.

44. When Fink began to criticize Plaintiff for taking bathroom breaks, informing Plaintiff that *again*, he needed to apply for completely ***new and separate*** accommodations for

bathroom breaks, Plaintiff objected to her discriminatory and retaliatory behavior, by asking Fink if he needed to inform her that he was taking FMLA and/or ADA-qualifying medical leave each and every time he used the restroom, as FMLA can be utilized for medically related breaks.[1]

45. In response to Plaintiff's aforesaid question regarding medical breaks to use the restroom for his disabilities, Fink failed to reply, and just hostilely continued to berate Plaintiff for taking breaks related to his health conditions.

46. Thereafter, on or about February 18, 2025, Plaintiff properly called out and utilized his intermittent FMLA leave for a flareup of his aforementioned health conditions.

47. However, ***just two days later,*** on or about February 20, 2025, when Plaintiff arrived at work, he was called into the back office by Fink; who, with another employee, abruptly terminated Plaintiff purportedly for "attendance," as well as for allegedly being seen vaping on the sales floor ***some two weeks prior***.

48. Defendant's aforesaid reasons for Plaintiff's termination – "attendance issues," as well as purported vaping, are downright discriminatory, retaliatory, and completely pretextual because (1) Plaintiff was terminated ***just two days after utilizing ADA– and FMLA–qualifying intermittent medical leave***; and (2) several other non-disabled employees vape on the sales floor on a routine basis but were not terminated, much less disciplined for the same.

49. Defendant failed to properly accommodate Plaintiff by refusing to allow him to utilize his phone (*i.e.,* heart rate and/or hearing aid apps) and bathroom breaks as needed for his serious health conditions and terminating him directly for taking medical leave for the same.

---

[1] *See e.g. Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192 (S.D. Cal. 1998) (Employees may take leave in ***any size increments*** and employers may account for the leave in the shortest period of time the payroll system uses to calculate absences); *see also Sabbrese v. Lowe's Home Centers, Inc.,* 320 F. Supp. 2d 311 (W.D. Pa. 2004) (explaining that an employer is prohibited from counting medically necessary breaks against an employee under the FMLA) (emphasis added); *Collins v. U.S. Playing Card Co.*, 466 F. Supp. 2d 954 (S.D. Ohio 2006) (same).

50. Plaintiff believes and therefor avers that he was subjected to discrimination, retaliation, and a hostile work environment because of: (1) his actual/perceived/record of health conditions; (2) his requests for reasonable accommodations; (3) his objections to/complaints of unfair treatment as a result of his disabilities; and (4) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

51. Plaintiff also believes and therefore avers that his disabilities were motivating and/or determinative factors in the termination of his employment by Defendant.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; & [4] Hostile Work Environment)**

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Plaintiff suffers from qualifying health conditions under the ADA which affects his ability (at times) to perform some daily life activities.

54. Plaintiff kept Defendant's management informed of his disabilities and need for medical accommodations throughout his employment with Defendant.

55. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

56. Plaintiff requested reasonable accommodations from Defendant, including but not limited to the ability to use his cell phone health-related apps to monitor his serious health conditions, breaks as needed to use the bathroom for the same, and intermittent and/or block medical leave.

57. Plaintiff was subjected to hostility and animosity due to his health and/or requests for accommodations through demeaning and/or discriminatory treatment towards him (as discussed *supra*).

58. Plaintiff objected to/complained of the aforementioned instances of disparate treatment, disability discrimination, and retaliation to Defendant's management.

59. Instead of properly addressing his objections to/complaints of unfair treatment as a result of his disabilities, Plaintiff was terminated from his employment with Defendant on or about February 20, 2025, for completely pretextual reasons ***just two days*** after requesting/utilizing reasonable accommodations and in close proximity to his complaints of disability discrimination and retaliation.

60. Defendant failed to properly accommodate Plaintiff by refusing to allow him to utilize his phone (*i.e.,* heart rate and/or hearing aid apps) and bathroom breaks as needed for his serious health conditions and terminating him directly for taking medical leave for the same.

61. Plaintiff believes and therefor avers that he was subjected to discrimination, retaliation, and a hostile work environment because of: (1) his actual/perceived/record of health conditions; (2) his requests for reasonable accommodations; (3) his objections to/complaints of unfair treatment as a result of his disabilities; and (4) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

62. Plaintiff also believes and therefore avers that his disabilities were motivating and/or determinative factors in the termination of his employment by Defendant.

63. These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of The Family and Medical Leave Act ("FMLA")**
**([1] Retaliation & [2] Interference)**

64. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

66. Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

67. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

68. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees at Plaintiff's location of work and within a seventy-five (75) mile radius surrounding such location, for each working day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

69. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

70. Plaintiff was terminated in close proximity to his requests for intermittent and/or block medical leave to care for and treat his serious health conditions.

71. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-

qualifying leave in the future; and (4) making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA.

72. These actions as aforesaid constitute violations of the FMLA.

**COUNT III**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)**

73. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

74. Plaintiff has properly exhausted his administrative remedies regarding his PHRA claims by dual filing his Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by waiting at least one year since the filing before asserting his PHRA claims.

75. The conduct, as set forth in Count I, also constitutes violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority; Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: September 2, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Geoffrey G. George | : | CIVIL ACTION |
| v. | : | |
| Lowe's Home Centers, LLC d/b/a Lowe's | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 9/2/2026 | [signature] | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:__________________ Judge:__________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):______________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*______________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[ X ] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
GEORGE, GEOFFREY G.

**(b)** County of Residence of First Listed Plaintiff: Berks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

**DEFENDANTS**
LOWE'S HOME CENTERS, LLC D/B/A LOWE'S

County of Residence of First Listed Defendant: Iredell
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer. w/Disabilities - mployment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 9/2/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______